Argued and submitted April 19, affirmed June 23,
reconsideration denied August 20,
petition for review denied September 21, 1982 (293 Or 634)

STORK et al,
*Appellants,*

*v.*

COLUMBIA RIVER PEOPLE'S
UTILITY DISTRICT et al,
*Respondents.*

(No. 26840, CA A21779)

646 P2d 1372

David B. Williamson, St. Helens, and John W. Osburn, Portland, argued the cause for appellants. With them on the briefs was Williamson, Williamson & Leineweber, St. Helens.

Robert A. Lucas, St. Helens, argued the cause for respondents. With him on the brief was Lucas, Petersen & Huffman, St. Helens.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs, taxpayers residing in Columbia County, challenge a special election held in November, 1980, approving a $17 million general obligation bond issue to allow acquisition of electrical energy facilities by a people's utility district (PUD). Plaintiffs sought invalidation of the election on the grounds that (1) some illegal votes were cast and some legal voters were disenfranchised; and (2) defendants, the directors of the PUD, ran an advertisement containing a false and misleading statement in violation of the Corrupt Practices Act, ORS 260.532. The trial court, sitting without a jury, upheld the election. On appeal, plaintiffs assign error to the trial court's (1) upholding the election despite a level of disenfranchisement that could have changed the result of the election; (2) upholding the election despite the false statement of material fact; and (3) awarding attorney fees to defendants. We affirm.

Columbia River People's Utility District was formed in 1940; its boundaries were designated as falling outside the then corporate limits of cities in the county. After 1940, the cities annexed various areas. Although the *actual* PUD boundaries remained the same, voters in the annexed areas were not considered to reside within the district for the purposes of subsequent PUD elections. In 1975, counsel for the PUD notified the county of the annexation problem. The county election official contacted the cities, and by utilizing county records redrew some of the PUD boundary lines. A 1978 election was held, without objection from any voter. With respect to the 1980 election challenged in this proceeding, the trial court made findings of fact set forth here in relevant part:

"1. On November 4, 1980, the Columbia River People's Utility District duly and regularly held a special election on the question of whether they should contract a general obligation bonded indebtedness not to exceed 17 million dollars ($17,000,000). The initial count showed the measure passed 3,533 votes to 3,502 votes. Upon recounting, the measure passed by 66 votes with 3,562 votes in favor and 3,496 against.

"2. Primarily because of difficulty in determining the 1940 boundary lines of the excluded municipalities and determining the location of voters' properties in relation to

those boundaries, some voters outside the district voted and other voters within the district were not given an opportunity to vote. * * *

" * * * * *

."6.  Twenty-three (23) illegal 'yes' votes and twelve (12) illegal 'no' votes were cast. One hundred twenty-nine (129) voters were disenfranchised. * * *

"7.  None of the disenfranchised voters exercised a challenge to their denial of a ballot by election officials.

"8.  The elections officials for Columbia County were not aware of any particular problem with their election materials for the district prior to the November 4, 1980, election. The election officials were diligent and careful in their work."

■     The first issue is whether plaintiffs' attack on the election is an election contest under ORS chapter 258 or a challenge to certain PUD proceedings under ORS chapter 261. Plaintiffs argue that the proceeding was brought under both, but they seek to avoid the "deliberate and material" standard required to set aside an election under ORS 258.016(1).[1] Instead, plaintiffs contend the appropriate standard is supplied by ORS 261.620,[2] which provides that the court must disregard any error or irregularity not affecting the substantial rights of the parties.[3] We resolve the ambiguity in plaintiffs' characterization of the action in favor of applying ORS chapter 258.

_____

[1] ORS 258.016 provides, in pertinent part:

"The nomination or election of any person or the decision on any measure may be contested by any elector entitled to vote for the person or measure, or by any person who was a candidate at the election for the same nomination or office, only for the following causes:

"(1) Deliberate and material violation of any provision of the election laws in connection with the nomination, election, approval or rejection."

[2] ORS 261.620 provides:

"The court, in inquiring into the regularity, legality or correctness of any such proceedings, must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to the special proceedings. It may approve the proceedings in part and disapprove and declare illegal or invalid other or subsequent proceedings in part. It may approve the proceedings in part and disapprove the remainder thereof."

[3] The obverse of that proposition is that, if the error does affect substantial rights, the court must not disregard it, i.e., must consider it. Even were this a chapter 261 proceeding, that falls short of a substantive test.

■     ORS 261.605(1) provides for judicial review of proceedings in connection with the creation of a PUD. This PUD was created in 1940, and has had a board of directors with regular elections since that time, although it has not furnished electricity to its constituents. Although the bond issue was thus necessary to "energize" the PUD, we do not consider that to be part of the creation or establishment of the PUD. Moreover, the proceeding challenged here does not fall within the chapter 261 provisions cited by plaintiffs. Plaintiffs first rely on ORS 261.605(1)(a), permitting court review of an irregularity with respect to the action of a county governing board in "declaring the result of any general or special election" in a PUD. Plaintiffs have alleged no irregularity, however, in the county's "declaring" the results of the election; the challenge is to the election procedure itself. Second, plaintiffs point to ORS 261.605(1)(b), allowing review of actions of a PUD in authorizing and providing for issue and sale of bonds. But other than in their corrupt practices claim, which we hold *infra* to be ineffective, plaintiffs do not focus on the acts of the PUD but on the acts of the county election officials in running the election. In short, this is an election contest brought under ORS chapter 258 to set aside an election. The trial court properly so ruled in granting defendants' motion to strike the original petition on the ground that it contained more than one claim not separately stated. We conclude that the trial court properly tested the claimed irregularity by the "deliberate and material" standard of ORS 258.016(1).

■ ■     Our scope of review is that applied to actions at law determined without a jury, and the question is whether there is substantial evidence to support the trial court's finding that there was no clear and convincing evidence of a deliberate and material violation of the election laws. *Thomas v. Penfold,* 23 Or App 168, 171-72, 541 P2d 1065 (1975). Here, there were not enough illegal votes cast to change the outcome of the election, a prerequisite under ORS 258.026(2) for setting the election aside. Therefore, the principal factual issue before the trial court was whether the disenfranchisement of some voters occurred as a result of deliberate and material acts by the county. Plaintiffs contend that, because the PUD's attorney

notified the county clerk in 1975 of the annexation problem, *any* irregularity in the 1980 election was axiomatically deliberate. In one of its memorandum opinions, incorporated by reference in the judgment, the trial court noted that the county was *in fact* diligent:

"In 1975 it was brought to the attention of the elections supervisor that city annexations subsequent to 1940 did not cause a movement of the district boundary. That is, the district boundary around each city remained at the 1940 line. Upon learning this, action was taken to obtain descriptions of the 1940 city boundaries. The evidence establishes that although there have been problems in obtaining these descriptions and mapping them, the real difficulty in this election revolves around the location of particular properties in relation to those lines. However, I find that the elections officials for Columbia County were not aware of any particular problem with their election materials for the district prior to the November 14th election. Although questions had been raised in earlier elections, they were not of major proportions and the county election officials were satisfied that the problems raised were properly resolved. Further, there is nothing in the evidence to suggest that the clerk, the elections supervisor and the additional full-time employee who works in elections have not been diligent and careful in their work. The evidence is to the contrary."

Plaintiffs do not contend that the record lacks substantial evidence to support the trial court's findings on this issue. There was no error.[4]

---

[4] Plaintiffs further contend that the trial court erred in calculating the effect of disenfranchisement by apportioning votes according to voting patterns in the disputed areas to conclude that the outcome would not have been affected. *See Hammond v. Hickel,* 588 P2d 256 (Alaska 1978) (disenfranchised votes added to totals of candidates in proportion to votes received by candidate in precinct where disenfranchised votes would have been counted). Even assuming *arguendo* that that procedure involved impermissible uncertainty, *see Wood v. Fitzgerald and Wingate,* 3 Or 568 (1870) (testimony of disenfranchised voter as to how the person would have voted is too uncertain), that does not dispose of the issue. In the final judgment, the trial court explicitly found that none of the disenfranchised voters challenged their denial of ballots by election officials. As defendants argue in support of the trial court's decision, the disenfranchised voters did not avail themselves of the statutory procedure for making a record of their votes pursuant to ORS 254.415 to 254.425, when denied the right to cast their ballots. Had the persons who claimed they were disenfranchised followed the statutory procedure, there would have been no uncertainty about whether their votes would have affected the outcome of the election.

■ With respect to the second assignment, plaintiffs contend that the trial court erred in ruling that the PUD directors' pledge that they would not levy property taxes to pay for the bond issue was not a false statement of material fact but, rather, a campaign promise. The short answer is that ORS 260.532,[5] upon which plaintiffs rely, authorizes only the award of damages for a false publication relating to measures. Plaintiffs' amended petition does not pray for damages under ORS 260.532(5) but seeks to have the

---

[5] ORS 260.532 provides, in relevant part:

"(1) No person shall cause to be written, printed, published, posted, communicated or circulated, any letter, circular, bill, placard, poster or other publication, or cause any advertisement to be placed in a publication, or singly or with others pay for any advertisement, with knowledge or with reckless disregard that the letter, circular, bill, placard, poster, publication or advertisement contains a false statement of material fact relating to any candidate, political committee or measure.

"* * * * *

"(4) Any candidate or political committee aggrieved by a violation of this section shall have a right of action against the person alleged to have committed the violation. The aggrieved party may file the action in the circuit court for any county in this state in which a defendant resides or can be found or, if the defendant is a nonresident of this state, in the circuit court for any county in which the publication occurred. To prevail in such an action, the plaintiff must show by clear and convincing evidence that the defendant violated subsection (1) of this section.

"(5) Except as provided in subsection (6) of this section, a plaintiff who prevails in an action provided by subsection (4) of this section shall recover punitive damages and also may recover general damages if any have been suffered. Proof of general damages is not required for recovery of punitive damages. Any prevailing party may be awarded reasonable attorney fees at trial and on appeal.

"(6) A political committee has standing to bring an action provided by subsection (4) of this section as plaintiff in its own name, if its purpose as evidenced by its preelection activities, solicitations and publications has been injured by the violation and if it has fully complied with the provisions of this chapter. A political committee may not be sued as defendant in such an action. A recovery made by a political committee which prevails in an action under this section shall be distributed pro rata among the persons making contributions to the committee.

"(7) If a judgment is rendered in an action under this section against a defendant who has been nominated to public office or elected to a public office other than state Senator or state Representative, the defendant shall be deprived of the nomination or election and the nomination or office shall be declared vacant.

"* * * * *

"(9) The remedy provided under subsection (4) of this section is the exclusive remedy for a violation of this section."

election set aside and the ballot measure rejected. That remedy is available only where judgment is rendered against a *candidate,* who must then be deprived of the nomination or election and the post declared vacant. ORS 260.532(7). Even assuming that the representation was a false statement of material fact, that would not advance plaintiffs' cause here. Any error committed by the trial court is simply irrelevant.[6]

■   Finally, plaintiffs contest the trial court's award of attorney fees on the ground that ORS chapter 261 does not provide for them. We have already determined ORS chapter 258 governs this election contest; ORS 258.046(2) authorizes the award of attorney fees to the prevailing party in the contest.

Affirmed.

---

[6] An even shorter answer, not suggested by defendants, is that plaintiffs, not being candidates or a political committee, have no standing to bring any claim for a violation of ORS 260.532. *See* ORS 260.532(4) and (9), *supra,* n 6.